**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DANIEL JERDEN; CATRINA JERDEN,
          *Plaintiffs-Appellants,*

v.

PAUL G. AMSTUTZ, M.D.,
          *Defendant-Appellee.*

No. 04-35889

D.C. No.
CV-02-03056-JPC

OPINION

Appeal from the United States District Court
for the District of Oregon
John P. Cooney, Magistrate Judge, Presiding

Argued and Submitted
September 13, 2005—Portland, Oregon

Filed December 9, 2005

Before: Raymond C. Fisher, Ronald M. Gould, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Gould

## COUNSEL

Megan B. Annand, Law Office of Megan B. Annand, Medford, Oregon, for the plaintiffs-appellants.

Robert L. Cowling (argued) and Benjamin M. Bloom, Cowling, Heysell, Plouse, Ingalls & Moore, Medford, Oregon, for the defendant-appellee.

## OPINION

GOULD, Circuit Judge:

In this diversity case, Plaintiffs-Appellants Mr. Daniel and Ms. Catrina Jerden ("Plaintiffs") brought a claim of medical negligence against Defendant-Appellee Dr. Paul G. Amstutz ("Defendant") after Defendant, a neurosurgeon, mistakenly diagnosed Mr. Jerden as having a brain tumor based partly on Defendant's interpretation of magnetic resonance imaging (MRI) reports. Defendant conducted invasive and unwarranted brain surgery on Mr. Jerden before the correct diagnosis of multiple sclerosis was made.

Plaintiffs appeal from the judgment entered against them after a jury trial resulted in a verdict for Defendant, contending that the district court committed reversible error warranting a new trial. Plaintiffs assert that there was reversible error based on: (1) the granting of Defendant's motion for a limiting instruction to the testimony of Plaintiffs' expert witness, Dr. Karl Gross, on the last day of trial; (2) the actual jury instruction limiting Dr. Gross's testimony; (3) the testimony of Defendant's witness, Mr. Don Bowser, relating to his opinion of the magnetic resonance angiogram (MRA) report; and (4) the district court's denial of Plaintiffs' motion for a new trial in light of the above claims and newly discovered evidence that Defendant has a prosthetic eye. We agree that there was error in the granting of a motion limiting the jury's consideration of Dr. Gross's testimony, and error with regard to admission of Mr. Bowser's opinion concerning the MRA report. We reverse and remand.

## I

In June 2000, Mr. Jerden was referred to Dr. Amstutz, who was called upon to evaluate an unknown illness. After examining MRI reports of Mr. Jerden, Dr. Amstutz made a diagnosis that Mr. Jerden had a brain tumor and recommended a

craniotomy. On July 10, 2000, Dr. Amstutz performed a craniotomy on Mr. Jerden, who was thereafter correctly diagnosed with multiple sclerosis based on pathology analysis of the brain tissue removed during the operation.

Plaintiffs, in their action for medical negligence, asserted that a less invasive biopsy would have had fewer physical implications and would have allowed a greater possibility of recovery from the effects of the plaques formed in the brain by the demyelination associated with multiple sclerosis. Plaintiffs alleged that Defendant failed to review adequately the diagnostic MRI reports, radiology reports, and Mr. Jerden's medical history and symptoms, which indicated signs of multiple sclerosis. Plaintiffs also contended that Defendant was negligent for failing to use less intrusive diagnostic methods than the craniotomy and for failing to consult with qualified specialists such as neurologists.

The jury trial commenced on May 24, 2004. As pertinent to this appeal, Plaintiffs presented testimony from two medical doctors, Dr. Karl Gross, a neurologist, and Dr. Martin Johnson, a neurosurgeon, who both testified that Defendant breached his standard of care and that this breach was the cause of Plaintiffs' injuries. Defendant countered with the presentation of medical testimony from Dr. Elaine Edmonds, a neurologist, and Dr. Edward A. Neuwelt, a neurosurgeon, who both testified that the initial diagnosis of a brain tumor was reasonable under the circumstances. In addition, the jury heard testimony from Defendant Dr. Amstutz and from a neurosurgical nurse practitioner, Mr. Bowser, who had worked with Defendant since 1997 and who had assisted Dr. Amstutz during Mr. Jerden's operation.

After a six-day trial, the jury returned a verdict for the Defendant on June 1, 2004. On June 16, 2004, Plaintiffs filed their motion for new trial which was denied on September 3, 2004. Plaintiffs appeal.

## II

We first consider Plaintiffs' contention that the district court erred by granting a motion to strike testimony of Dr. Gross, a neurologist, and instructing the jury that it could not consider his testimony on the issue of negligence.[1]

[1] Oregon has adopted a locality rule in medical malpractice actions whereby physicians have "the duty to use that degree of care, skill and diligence that is used by ordinarily careful physicians or podiatric physicians and surgeons in the same or similar circumstances in the community of the physician or podiatric physician and surgeon or a similar community." Or. Rev. Stat. § 677.095 (2003) (last amended Aug. 5, 1997). Pursuant to Federal Rule of Evidence 601, the district court was required to follow the Oregon locality rule when presented with the testimony of out-of-town medical experts who testify as to the appropriate standard of care for local physician defendants. Under this evidentiary rule, out-of-town experts must show "knowledge of what is proper conduct by practitioners in the community or a similar community under circumstances similar to those which confronted the defendant." *Creasey v. Hogan*, 637 P.2d 114, 122 (Or. 1981).

During the trial, on Wednesday, May 26, 2004, Dr. Gross testified for Plaintiffs, stating that an ordinarily reasonable surgeon would not have made the incorrect diagnosis and would have referred the patient to a neurologist before conducting the operation. Dr. Gross did not expressly testify that he had knowledge of the proper medical conduct within Defendant's community or a similar community. During the testimony of Dr. Gross, counsel for Defendant objected based on "lack of foundation, lack of qualification as to what a surgeon should do," after asking Dr. Gross if he ever practiced

---

[1] We review rulings to admit or exclude evidence for an abuse of discretion and will not reverse absent prejudice. *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 650 n.3 (9th Cir. 2005).

surgery. Although the district court did not at this time make a ruling concerning this objection, Plaintiffs' counsel in substance cured this objection by asking Dr. Gross about his professional experience as a neurologist working with neurosurgeons. *See Creasey*, 637 P.2d at 118 (allowing the testimony of medical experts from another discipline in medical malpractice actions on matters where the principles of both schools concur).

On May 28, 2004, Defendant moved to strike the portion of Dr. Gross's testimony relating to whether Defendant satisfied his standard of care. The record is not crystal clear on whether the basis for the motion was disclosed when it was made on May 28th, or on the last day of trial, June 1st, when the motion was granted. However, this potential difference is not material to our analysis which proceeds on the assumption that the basis was disclosed on May 28, two days after Dr. Gross's testimony had concluded. Defendant argued that Dr. Gross's testimony relating to Defendant's standard of care was inadmissible because Dr. Gross, in his testimony two days earlier, had not stated that he was familiar with the proper medical conduct in Defendant's community in compliance with the foundational requirement under *Creasey*.[2] The court granted the Defendant's motion to strike on June 1, concluding that a necessary predicate for the testimony was not

---

[2]An expert can satisfy this requirement without actual knowledge of the defendant's community and may even testify that a nationally uniform standard of care should govern the defendant's conduct. *See Mosley v. Owens*, 816 P.2d 1198, 1201-1202 (Or. Ct. App. 1991). Furthermore, Defendant Dr. Amstutz himself introduced testimony of an out-of-town neurologist stating an opinion as to Defendant's standard of care which was admitted after the neurologist acknowledged that she was familiar with the standard of care governing the locality. Defendant's witness expressly testified that she was "familiar with the appropriate methods of practice for doctors who take care of patients with MS and physicians who actually diagnose MS such as Dr. Amstutz, who is a neurosurgeon in this case practicing in Klamath Falls" and that she was "familiar with what is appropriate care for those neurosurgeons under these circumstances."

given, which the court described as a lack of "magic words."[3] Shortly thereafter, the court instructed the jury: "You have heard testimony from Karl Gross, M.D. This testimony should be considered by you for a limited purpose only. You are instructed that you may not use any of Dr. Gross' testimony as a basis for deciding whether Dr. Amstutz was negligent."

Plaintiffs have argued on appeal that the limiting instruction regarding Dr. Gross's testimony should not have been given because the objection was untimely, and because the phrasing of the instruction was overbroad. We focus on the first contention, and consider the issue of the timeliness of the objection to be dispositive in our assessment of whether trial error by the district court occurred.[4]

The rule requiring timely objection to evidence in federal trials is set forth explicitly in the Federal Rules of Evidence. "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is

---

[3]In ruling on the Defendant's motion, the district court stated: "The Court invited counsel to show the Court where in the transcript of Dr. Gross's testimony there was that necessary predicate. And counsel quite candidly has said that the magic words, if you will, are not there or remain — that she cannot find them either."

[4]Because Plaintiffs did not object to the wording of the instruction, their challenge to the ambiguous language is waived. Fed. R. Civ. P. 51. Plaintiffs' opposition to the motion to strike did not alert the district court to Plaintiffs' particular concerns about the language of the instruction and in our view the lack of a specific objection on this ground cannot be justified based on the "pointless formality" exception. *Voohries-Larson v. Cessna Aircraft Co.*, 241 F.3d 707, 714 (9th Cir. 2001). We have recognized only a limited sphere for plain error in a civil case. As we held in *Bird v. Glacier Electric Cooperative, Inc.*: "We will review for plain or fundamental error, absent a contemporaneous objection or motion for a new trial before a jury has rendered its verdict, where the integrity or fundamental fairness of the proceedings in the trial court is called into serious question." 255 F.3d 1136, 1148 (9th Cir. 2001). Assuming, without deciding, that plain error can ever be found under this standard as to jury instructions for which objection was not given, the jury instruction given here without objection does not meet our standard for plain error.

affected, and . . . a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context . . . ." Fed. R. Evid. 103 (2005).

**[2]** This rule is reflected in the guidance of a respected procedural treatise. "An objection must be made as soon as the ground of it is known, or could reasonably have been known to the objector, unless some special reason makes its postponement desirable for him and not unfair to the offeror." 21 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5037.1 (2d ed. 2005) (citing John H. Wigmore, *Code of Evidence* 25 (3d ed. 1942)). The requirement of timely and specific objections "serves to ensure that the 'nature of the error [is] called to the attention of the judge, so as to alert him [or her] to the proper course of action and enable opposing counsel to take corrective measures.' " *United States v. Gomez-Norena*, 908 F.2d 497, 500 (9th Cir. 1990) (quoting Advisory Committee's Note to Rule 103(a), 56 F.R.D. 183, 195 (1972)) (first alteration in original).

**[3]** The specific basis for Defendant's objection to Dr. Gross's testimony should have been asserted when Dr. Gross testified as to Defendant's compliance with his standard of care without reciting that he had knowledge of the proper medical conduct within Defendant's community.[5] "An objection is 'timely' if it is made as soon as the opponent knows, or should know, that the objection is applicable." 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evi-*

---

[5]Because Defendant's objection during Dr. Gross's testimony did not make any reference to the community where Defendant practiced, it did not give the Plaintiffs fair notice of the grounds for Defendant's successful motion to strike Dr. Gross's testimony made on May 28, near the end of the trial. *See United States v. Gomez-Norena*, 908 F.2d 497, 500 (9th Cir. 1990) (holding that "a party fails to preserve an evidentiary issue for appeal not only by failing to make a specific objection, but also by making the *wrong* specific objection.") (citations omitted) (emphasis in original).

*dence* § 103.11 (Joseph M. McLaughlin ed., 2d ed. 1997) (footnotes omitted); *see also San Antonio Cmty. Hosp. v. So. Cal. Dist. Council of Carpenters*, 125 F.3d 1230, 1238 (9th Cir. 1997) (concluding that the failure to raise a hearsay objection until the close of direct examination is a waiver of the objection); *McKnight v. Johnson Controls, Inc.*, 36 F.3d 1396, 1408 (8th Cir. 1994); *Belmont Indus. v. Bethlehem Steel Corp.*, 512 F.2d 434, 437-38 (3d Cir. 1975).

Despite the apparent delay and the lack of timeliness of the Defendant's specific objection at issue, we recognize that "trial courts have broad discretion in making evidence rulings and handling late objections." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1329 (9th Cir. 1995); *see also United States v. Achiekwelu*, 112 F.3d 747, 754 (4th Cir. 1997) ("Even when a district court admits evidence without objection, the district court has the discretion to grant a subsequent motion made after the close of the evidence to exclude the evidence."). However, we hold here that the court's late exclusion of Dr. Gross's testimony was an abuse of its discretion because the untimely decision unfairly prevented Plaintiffs from providing a curative response.

**[3]** We have adhered to the general rule that neither the district court nor the opposing party may unfairly deprive parties of the opportunity to lay a foundation in support of their evidence. The opposing party may not delay objections until after trial such that it becomes too late to resolve them effectively. *See Bartleson v. United States*, 96 F.3d 1270, 1278 (9th Cir. 1996) (holding that an objection not raised during trial is waived because the delay "denied [the witness] the opportunity to lay a better foundation for his testimony, and potentially denied the government the opportunity to introduce other evidence on the issue"). Also, the district court may not exclude evidence before trial without allowing the parties to lay a foundation for its admission. *See Wendt v. Host International, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (holding that the district court abused its discretion in exclud-

ing evidence on summary judgment without providing the parties with "the opportunity respectively to lay a foundation for the admission of the survey or to challenge the adequacy of the foundation"). Our prior decisions viewed together support the principle that an objection to admission of evidence on foundational grounds must give the basis for objection in a timely way to permit the possibility of cure.

This principle is reinforced by decisions of other circuits that have required district courts to give parties an opportunity to respond to objections to the foundation of their evidence. "Given the 'liberal thrust' of the federal rules it is particularly important that the side trying to defend the admission of evidence be given an adequate chance to do so." *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 417 (3d Cir. 1999) (citation omitted). "Counsel should not 'sandbag' *Daubert* concerns until the close of an opponent's case, thereby placing opposing counsel and the trial court at a severe disadvantage." *Alfred v. Caterpillar, Inc.*, 262 F.3d 1083, 1087 (10th Cir. 2001).[6]

**[4]** Considering our precedent and that of other circuits interpreting Rule 103, we hold that the exclusion of testimony for lack of foundation is improper following an untimely objection if such objection unfairly deprives the proponents of the testimony of an opportunity to cure the objection. Applying this rule here, we conclude that the district court did not give Plaintiffs an opportunity to lay a foundation for the testimony after the basis of Defendant's objection to the existing foundation was belatedly made clear. Any foundational flaw in the testimony of Dr. Gross as presented likely could have

---

[6]In contrast to this reasoning, the Fourth Circuit in *United States v. Achiekwelu* sustained the granting of an untimely objection, which was asserted after closing arguments, that defendant failed to provide authentication for a key document. 112 F.3d at 754. The court there held that Rule 103's requirement of timely objections only applied to the appellate court's ability to review erroneous rulings, and did not limit the district court's discretionary power to grant these objections. *Id.*

been fixed if Defendant had disclosed to Plaintiffs the basis for his objection when Dr. Gross was still on the witness stand and available to amplify his testimony.[7]

[5] Defendant contended at oral argument that his objection at the close of Plaintiffs' evidence was timely because Plaintiffs failed to present an essential element of their case so that the testimony was not improper until Plaintiffs closed their case without providing the necessary predicate. However, we reject this argument because Oregon case law describes the foundation requirement as a rule of evidence, and not as an element of defendant's standard of care. *See Creasey*, 637 P.2d at 121 (stating that while the definition of Defendant's standard of care is a rule of law, "[t]he evidence question is one of foundation or competency: Can an out-of-town expert testify as to the propriety of a local practitioner's treatment absent some knowledge of the standard of medical treatment in the community?"). Therefore, the testimony of Dr. Gross was immediately objectionable once Dr. Gross stated his opinion on the standard of care if he had not satisfied all necessary foundation for his opinion testimony.[8]

---

[7]The district court stated in its order denying Plaintiffs' motion for a new trial that Plaintiffs could have corrected the foundational flaw by arranging for the witness to testify by telephone. Plaintiffs assert that this option was not actually presented to them when the court considered the motion to strike. Testimony in open court by telephone is permitted "for good cause shown in compelling circumstances and upon appropriate safeguards," Fed. R. Civ. P. 43(a). In light of the district court's error in validating an untimely objection, it would be unfair to require Plaintiffs to have initiated the option of a telephone deposition supplementing Dr. Gross's testimony given the short amount of time before the trial was set to end and the relative disadvantage of having a key expert witness testify by telephone.

[8]This conclusion is strengthened by considering the procedural context. If Defendant had intended to argue in the district court that Plaintiffs had failed to present evidence as to all elements of their claim, Defendant might have tried to move for a directed verdict rather than for an instruction limiting portions of Dr. Gross's testimony.

**[6]** A timely and specific objection to Dr. Gross's knowledge of the standard of medical conduct in Defendant's community would have allowed Plaintiffs to attempt to resolve the foundational concern by asking Dr. Gross whether he had knowledge of the proper standard for Defendant's community or a similar community. The district court should have given Plaintiffs an opportunity to lay a proper foundation under the locality rule, if they could do so, before the court decided to grant Defendant's untimely motion and to severely limit the jury's consideration of Dr. Gross's testimony. By striking key portions of Dr. Gross's testimony that supported the negligence claim, without providing Plaintiffs with an opportunity to correct the foundational requirement of knowledge of local medical standards, the district court abused its discretion.

## III

Plaintiffs also assert error in the admission of Mr. Bowser's testimony concerning his observations of the MRA report, which are a special type of MRI report. Mr. Bowser is a neurosurgical nurse practitioner who acted as Defendant's surgical assistant during the operation on Mr. Jerden. He testified that he routinely reviewed imaging reports before operations although he was not licensed to interpret them.

Plaintiffs examined Mr. Bowser as an adverse witness during their case-in-chief. During cross-examination, Defendant asked Mr. Bowser about his observations of the MRA report of Mr. Jerden and whether he thought that they indicated a brain tumor. Defendant argues that Plaintiffs failed to make a timely objection to this testimony. The transcript shows that Plaintiffs' counsel promptly and specifically objected when these questions were raised by the Defendant but the objection was overruled by the court.[9] The district court held that

---

[9]Defendant's argument that Plaintiffs "opened the door" to this testimony also fails because Plaintiffs never sought the opinion of Mr. Bowser. "Under the rule of curative admissibility, or the 'opening the door' doc-

these statements were admissible because Mr. Bowser was testifying as a fact witness and did not state any opinions as an expert.[10]

[7] Lay witnesses can permissibly base opinion testimony upon their experience, but the Federal Rules of Evidence require that lay opinion testimony be "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "The mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702." *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997) (holding that opinions were based on specialized knowledge within the meaning of Rule 702 because they were "properly characterized as testimony based on the perceptions, education, training, and experience of the witness").

Mr. Bowser's testimony contained detailed and scientific observations about the MRA report and the conclusions that he interpreted the MRA of Mr. Jerden's brain to show signs

---

trine, the introduction of inadmissible evidence by one party allows an opponent, in the court's discretion, to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission." *United States v. Whitworth*, 856 F.2d 1268, 1285 (9th Cir. 1988) (citation omitted). Plaintiffs questioned Mr. Bowser about the actual diagnosis made before the surgery and how this diagnosis affected their surgical procedure. The diagnosis and its effect on the surgery is a fact independent of any personal opinion held by Mr. Bowser. Plaintiffs did not attempt to introduce inadmissible expert opinion from these questions such that Defendant would be permitted to follow them through the door.

[10]In its order denying Plaintiffs' motion for a new trial, the court upheld its admission of Mr. Bowser's testimony and its overruling of Plaintiffs' objection by stating that the "trial transcript shows that Mr. Bowser did not testify as an expert, and that he only testified as to what he did in his practice, and specifically as to plaintiff Daniel Jerden's care."

of a brain tumor. Mr. Bowser's testimony did not merely relate his factual observations of what occurred that was within his competence to describe; instead, he rendered opinions and inferences that he drew from his observations and that, as he himself admitted, he was not competent to provide.

**[8]** Because of its incorrect conclusion that Mr. Bowser was simply testifying about facts, the district court did not use the proper standards to determine whether the opinions expressed by Mr. Bowser should have been characterized as expert or lay opinions. If the district court wanted to consider Mr. Bowser's opinion as a lay opinion, then it was necessary to assess all requirements of Federal Rule of Evidence 701: that the opinion is rationally based on the witness's perceptions, that it is helpful to a trier of fact, and that it is not based on scientific, technical or other specialized knowledge.[11]

Plaintiffs are entitled to a thorough evaluation of Mr. Bowser's qualifications to interpret an MRA report as either a qualified expert or as a lay witness entitled to give opinion, in light of the division in the testimonial opinions that were given by undisputedly qualified experts. *See Figueroa-Lopez*, 125 F.3d at 1246 ("Trial courts must ensure that experts are qualified to render their opinions and that the opinions will assist the trier of fact."). While the privileges granted to Mr. Bowser by the state licensing board are not dispositive of his right to testify, he must show greater expertise in the field before he can be deemed qualified to opine on the compli-

---

[11]From the record before us now, Mr. Bowser's statements that the MRA report showed a brain tumor appear to be in the nature of proffered expert opinions based on his experience as a nurse practitioner working in neurosurgery. If Mr. Bowser lacked the specialized experience to state these opinions as an expert consistent with Federal Rule of Evidence 702, then the record before us does not indicate that his opinions would likely be admissible as lay opinion testimony because the record does not disclose a rational basis in his perceptions or a legitimate capacity to help the trier of fact with lay opinion.

cated and divisive issue of this MRA report. On the current record, we are skeptical that he meets this standard.

**[9]** We conclude that it was error to permit Mr. Bowser to give opinion testimony interpreting the MRA report as showing a tumor when there was no testimony showing that he was qualified as an expert to do so, within the scope of Federal Rule of Evidence 702, or otherwise permitted to give lay opinion testimony consistent with the standards of Federal Rule of Evidence 701.

## IV

Although we have concluded that the district court erred in striking and limiting the testimony of Dr. Gross in light of the untimely specificity of the objection, and that the district court also erred in admitting Mr. Bowser's testimony on the same issue, these conclusions do not end our inquiry.

**[10]** Evidentiary errors to warrant reversal must affect the substantial rights of the appellant. *Obrey v. Johnson*, 400 F.3d 691, 699 (9th Cir. 2005) (citing Fed. R. of Evid. 103 and Fed. R. Civ. P. 61). However, we start with "a presumption of prejudice." *Id.* at 701. As pertinent here, that presumption may be rebutted if Defendant can show that, more likely than not, the jury would have reached the same verdict if Dr. Gross's testimony had been admitted on negligence and Mr. Bowser's testimony interpreting the MRA report had been excluded.

**[11]** We are considering these errors cumulatively. *See, e.g.*, *Gonzales v. Police Dept., City of San Jose, Cal.*, 901 F.2d 758, 762 (9th Cir. 1990) ("Considered together, there is no doubt that a remand is required in light of the cumulative effect of the two material errors."); *Gordon Mailloux Enters., Inc. v. Firemen's Ins. Co. of Newark, N.J.*, 366 F.2d 740, 742 (9th Cir. 1966) ("We conclude it too must be reversed; although the errors requiring reversal, if considered separately, were perhaps harmless, their cumulative effect was

prejudicial."). Many of our sister circuits have similarly held that cumulative error in a civil trial may suffice to warrant a new trial even if each error standing alone may not be prejudicial. *See, e.g.*, *Beck v. Haik*, 377 F.3d 624, 645 (6th Cir. 2004) ("Since a jury reaches its verdict in light of the evidence as a whole, it makes no sense to try to analyze errors in artificial isolation, when deciding whether they were harmless."); *Frymire-Brinati v. KPMG Peat Marwick*, 2 F.3d 183, 188 (7th Cir. 1993); *Malek v. Fed. Ins. Co.*, 994 F.2d 49, 55 (2d Cir. 1993); *Hendler v. United States*, 952 F.2d 1364, 1383 (Fed. Cir. 1991); *but see SEC v. Infinity Group Co.*, 212 F.3d 180, 196 (3d Cir. 2000).

**[12]** This case involved multiple medical experts on both sides testifying as to the proper interpretation of the MRI and MRA reports and whether Defendant's mistaken interpretation of the reports as showing a tumor, rather than demyelination, was a breach of his standard of care. The jury was required to decide which side to believe, assessing credibility of witnesses and determining how much weight to give the views of each. We cannot say that "it is more probable than not that the jury would have reached the same verdict" if Dr. Gross's testimony had not been limited and if Mr. Bowser's testimony had been. *Obrey*, 400 F.3d at 701. We conclude that the errors affected a substantial right of the parties and constituted reversible error warranting a new trial.[12] We accordingly reverse the district court's judgment and remand for further proceedings consistent with this disposition.

**REVERSED AND REMANDED.**

---

[12]Because we reverse on these evidentiary errors, we need not consider Plaintiffs' further argument that a new trial was warranted because of Plaintiffs' counsel's belated discovery that Defendant Amstutz had a prosthetic eye.